UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEGHAM MNATSAKANYAN, | Case No.: 19cv1987-GPC(KSC) |
| Petitioner, | **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |
| v. | |
| U.S. Department of Homeland Security ("DHS"); U. S. Department of Customs and Border Patrol ("CBP"); U.S. Citizenship and Immigration Services ("USCIS"); Kevin K. McAleenan, Acting Homeland Security Secretary; William P. Barr, Attorney General of the United States; Mark A. Morgan, Acting Commissioner of the U.S. customs and Border Patrol; Thomas Homan, Acting Director of U.S. Immigration and Customs Enforcement; Kenneth T. Cuccinelli, Acting Director of U.S. Citizenship and Immigration Services; Pete Flores, San Diego Field Director, CBP; Greg Archambeault, San Diego Field Office Director, ICE; Fred Figueroa, Warden, Otay Mesa Detention Center, | |
| , | |
| Respondents. | |

On October 15, 2019, Petitioner Gegham Mnatsakanyan ("Petitioner"), a detainee at the Otay Mesa Detention Center under the custody of the U.S. Department of Homeland Security ("DHS") pursuant to an expedited order of removal, filed a petition for writ of habeas corpus, naming DHS, the U.S. Department of Customs and Border Patrol ("CBP"), U.S. Citizenship and Immigration Services ("USCIS"), and several individual agency officials as respondents ("Respondents"). (ECF No. 1.) Petitioner seeks an order directing Respondents to vacate his expedited order of removal and providing him with a new opportunity to apply for asylum, withholding of removal, and Convention Against Torture ("CAT") relief. (*Id.*) Respondents filed an opposition. (ECF No. 4.) Petitioner did not file a reply. Based on the reasoning below, the Court DENIES the petition for writ of habeas corpus.

## **Background**

Petitioner is a native and citizen of Armenia, and in April 2019, Petitioner fled Armenia. (ECF No. 1, Pet. at ¶ 4.) On April 26, 2019, he presented himself at the U.S. Port of Entry in San Ysidro, California to request admission as an asylum applicant. (*Id.*) Upon presenting himself, CBP agents took Petitioner into custody. (*Id.*) On April 29, 2019, CBP placed Petitioner in expedited removal proceedings and referred him to an asylum officer for a credible fear determination. (ECF No. 1, Pet. at ¶ 67; DAR[1] Disc 1, Track 7 at 0:22.)

---

[1] Respondents lodged digital audio recordings ("DAR") in the form of two compact discs. (ECF No. 3.) The two compact discs include audio recordings of Petitioner's two immigration hearings on July 15,

On May 31, 2019, an asylum officer interviewed Petitioner.[2] (ECF No. 1, Pet. at ¶ 67; Disc 1, Track 2 at 2:15.) The asylum officer determined Petitioner did not have a credible fear of persecution. (ECF No. 1, Pet. at ¶ 67; DAR Disc 1, Track 7 at 4:20.) On June 27, 2019, a supervisor approved the asylum officer's adverse credible fear determination. (DAR Disc 1, Track 6 at 1:45.) Petitioner requested that an immigration judge ("IJ") review the asylum officer's adverse credible fear determination. (ECF No. 1, Pet. at ¶ 73; DAR Disc 1, Track 8 at 1:00.)

On July 15, 2019, Petitioner appeared before an IJ, without counsel, for an initial hearing. (ECF No. 1, Pet. at ¶ 74; DAR Disc 1, Track 1 at 0:15.) The IJ postponed the hearing to July 18, 2019 to review the case documents she had just received, asked the government to submit Petitioner's prior visa applications and "report of inadmissible alien" for the IJ's review, and allow Petitioner time to consult or obtain counsel. (ECF No. 1, Pet. at ¶ 74; DAR Disc 1, Track 1 at 1:25, 3:45; DAR Disc 1, Track 4 at 0:10; DAR Disc 1, Track 3 at 2:48.)

---

2018 and July 18, 2019. The Court notes that the second compact disc ends abruptly at the end of the IJ's ruling. (DAR Disc 2, Track 13 at 4:59.) Petitioner has not challenged the incomplete nature of the second compact disc. The Court issues this Order based on the IJ's extensive substantive discussion in the DAR.

[2] The Court notes that Petitioner may have had two interviews with an asylum officer; however, if that is the case, neither Petitioner nor Respondents provide the date of the second interview. (*See* ECF No. 1, Pet. at ¶ 69 (stating "[t]he asylum officer relied on the mistranslation to question [Petitioner's] testimony at the second Credible Fear Interview[,]" but providing no dates for either interview); ECF No. 4, Opp. at 1:20-24 (limiting discussion to one asylum interview on May 31, 2019); DAR Disc 1, Track 7 at 0:59 (indicating immigration officers questioned Petitioner on April 29, 2019, and an asylum officer interviewed Petitioner on May 31, 2019).)

Even though Petitioner requested a two-week extension to find counsel, (ECF No. 1, Pet. at ¶ 74; DAR Disc 1, Track 2 at 0:08), the IJ denied Petitioner's request noting that the federal regulations required her to conduct the hearing within seven days of the supervisor's signature, June 27, 2019, and the deadline had already passed. (DAR Disc 1, Track 2 at 0:40.) The IJ further observed that in April 2019, Petitioner had told CBP agents at the border that he had a cousin who was going to help him find a lawyer, yet Petitioner had not secured a lawyer months later. (*Id.* at 3:35.)

At the rescheduled hearing, Petitioner indicated he had secured counsel, but counsel was not present. (DAR Disc 1, Track 5 at 0:58.) According to Petitioner, his counsel asked for a one-week continuance to acquaint himself with the case and to meet Petitioner. (*Id.* at 1:50.) However, the IJ told Petitioner that while he had a right to consult an attorney, he did not have a right to be represented by one. (*Id.* at 4:40.) The IJ reminded Petitioner of her required seven-day deadline and proceeded to review Petitioner's credible fear review without Petitioner's counsel. (DAR Disc 1, Track 6 at 0:30.)

After permitting Petitioner to describe in detail and at length the circumstances that resulted in Petitioner presenting himself at the San Ysidro Port of Entry and requesting asylum, the IJ affirmed the asylum officer's adverse credible fear determination. (ECF No. 1, Pet. at ¶ 79.) Because Petitioner had sought two prior visa applications which were denied, the IJ concluded "[Petitioner] had to find another way to get here." (DAR Disc 2, Track 13 at 3:18.) Moreover, the time period when he sought the prior visa

applications was the same time when he claims he was allegedly being persecuted. (*Id.*) The IJ stated she was "not convinced that [Petitioner's] testimony [was] truthful" and concluded that Petitioner was not targeted, if at all, because of his political opinion. (DAR Disc 2, Track 12 at 4:00.)

On October 15, 2019, Petitioner filed a petition for writ of habeas corpus in this Court. (ECF No. 1, Pet.) On November 22, 2019, Respondents filed a return. (ECF No. 4.) Petitioner did not file a reply.

Petitioner alleges two causes of action. First, Petitioner claims Respondents violated his "statutory and regulatory rights by depriving him of a meaningful right to apply for asylum, withholding of removal, and [CAT[3]] relief under the governing statutes and regulations." (ECF No. 1, Pet. at ¶ 84.) These governing statutes and regulations, Petitioner alleges, "entitle Petitioner to a fair procedure to apply for asylum, withholding of removal, and CAT relief." (*Id.* at ¶ 85.) Petitioner argues his "procedural rights guaranteed by these statutes and regulations were violated." (*Id.*) Specifically, Petitioner claims the "asylum officer and immigration judge . . . erred by applying an incorrect legal standard[,]" resulting in Petitioner's expedited order of removal "despite the fact that he can show a significantly [sic] possibility that he could establish eligibility for asylum, withholding of removal, and CAT claims." (*Id.* at ¶ 86.) According to Petitioner, he "should have prevailed in establishing a credible fear and would thus have been allowed

---

[3] Convention Against Torture.

to pursue his claims for asylum, withholding of removal and protection under [CAT] in regular Section 240 immigration proceedings." (*Id.* at ¶ 87.)

Second, Petitioner claims his "due process rights were violated by the asylum officer and immigration judge in not providing him with a meaningful opportunity to establish his claims, failing to comply with the applicable statutory and regulatory requirements, and in not providing him with a reasoned explanation for their decisions." (*Id.* at ¶ 91.)

### A. Statutory Background to Expedited Removal

An arriving noncitizen seeking admission into the United States at a U.S. Port of Entry is "processed either through expedited removal proceedings or through regular removal proceedings." *Innovation Law Lab v. McAleenan*, 924 F.3d 503, 507 (9th Cir. 2019). Section 1225(b)(1) sets out the "procedures for expedited removal and specifies the class of non-citizens who are eligible for expedited removal[.]" (*Id.*)

A noncitizen arriving at a U.S. Port of Entry is subject to expedited removal proceedings if a CBP officer determines that the noncitizen "is inadmissible for misrepresenting a material fact or lacking necessary documentation[.]" 8 U.S.C. § 1225(b)(1)(A)(i). DHS may remove a noncitizen from the United States "without further hearing or review," unless "the [noncitizen] indicates an intention to apply for asylum . . . or a fear of persecution." 8 U.S.C. § 1225(b)(1)(A)(i). When a noncitizen indicates an intent to apply for asylum, "the officer shall refer the [noncitizen] for an interview with an asylum officer . . . ." 8 U.S.C. § 1225(b)(1)(A)(ii). A noncitizen will be removed if

"the officer determines that [a noncitizen] does not have a credible fear of persecution[.]"
8 U.S.C. § 1225(b)(1)(B)(iii). A supervisor then reviews the asylum officer's credible
fear determination. 8 C.F.R. § 208.30(e)(7)(i)(A). A noncitizen may also request that an
immigration judge conduct a *de novo* review of the asylum officer's adverse credible fear
determination. 8 U.S.C. § 1225(b)(1)(B)(iii)(III); 8 C.F.R. § 1003.42(d). Generally, if
the immigration judge agrees with the asylum officer's adverse credible fear
determination, the immigration judge's decision is final and may not be appealed. 8
C.F.R. § 1003.42(f) ("No appeal shall lie from a review of an adverse credible fear
determination made by an immigration judge.").

## Discussion

### A. Jurisdiction

Petitioner invokes this Court's jurisdiction under the habeas provision, 8 U.S.C. §
1252(e)(2), to support his assertion that "with respect to expedited removal orders issued
pursuant to 8 U.S.C. § 1225(b)(1), the proper forum for review is a district court habeas
proceeding" pursuant to 8 U.S.C. § 1252(e)(2) ("§ 1252(e)(2)"). (ECF No. 1, Pet. at ¶
18.) Petitioner also cites to numerous statutory, regulatory and constitutional bases for
the Court's jurisdiction, including the Suspension Clause, U.S. Const. art. I, § 9, cl. 2.
(*Id.* at ¶ 1.) Respondents maintain that 8 U.S.C. § 1252(e)(2) does not authorize this
Court's jurisdiction over Petitioner's habeas petition. (ECF No. 4, Opp. at 6-7[4].)

_____

[4] Page numbers are based on the CM/ECF pagination.

Respondents also challenge this Court's jurisdiction under the Suspension Clause. (*Id.* at 8-9.)

### 1. Jurisdiction Under 8 U.S.C. § 1252(e)(2)

Under § 1252(e)(2), an individual in expedited removal proceedings may file a habeas petition in federal district court to challenge only three DHS determinations: (1) whether the individual is a noncitizen, (2) whether the individual was ordered removed via expedited removal, and (3) whether the individual is a lawful permanent resident or has another status warranting exemption from expedited removal. 8 U.S.C. §§ 1252(e)(2)(A)-(C); *see Pena v. Lynch*, 815 F.3d 452, 456 (9th Cir. 2016) (stating "§ 1252(a)(2)(A) *strictly* circumscribes the scope of review of expedited removal orders to the grounds enumerated in § 1252(e)"). Judicial review of whether a petitioner was ordered removed is "limited to whether such an order in fact was issued and whether it relates to the petitioner. There shall be no review of whether the [noncitizen] is actually inadmissible or entitled to any relief from removal." 8 U.S.C. § 1252(e)(5). Respondents contend that Petitioner has not raised any of the three factual determinations; therefore, the Court lacks jurisdiction over the claims in the petition. (ECF No. 4, Opp. at 7-8.)

In *Thuraissigiam*, the petitioner, a noncitizen in expedited removal proceedings, filed a habeas petition in federal district court asserting "that 8 U.S.C. § 1252(e)(2)(B) authorizes review of the statutory, regulatory, and constitutional claims raised in his

habeas petition."[5] *Thuraissigiam v. U.S. Dep't of Homeland Sec.*, 917 F.3d 1097, 1102-1103 (9th Cir. 2019), *cert. granted*, 140 S. Ct. 427 (2019). Specifically, the petitioner invoked § 1252(e)(2) to request judicial review "of procedural violations" arising from his interview with an asylum officer and hearing before an immigration judge. *Id.* These procedural violations included the asylum officer's failure "to elicit all relevant and useful information bearing on whether the applicant has a credible fear of persecution or torture in violation of 8 C.F.R. § 208.30(d) and fail[ure] to consider relevant country conditions evidence in violation of 8 U.S.C. § 1225(b)(1)(B)(v) and 8 C.F.R. § 208.30(e)(2)." *Id.* at 1102 (internal quotation marks omitted).

The petitioner "also alleged that there were communication problems between the asylum officer, [petitioner], and the translator, in violation of 8 C.F.R. § 208.30(d)(1)-(2)." *Id.* (internal quotation marks omitted). He further "alleged that the [immigration judge] hearing included the same procedural and substantive flaws," including the application of "an incorrect legal standard to [petitioner's] credible fear application." *Id.* (internal quotation marks omitted). The Ninth Circuit found that § 1252(e)(2) did not authorize the federal district court to assert jurisdiction over the habeas petition because

---

[5] The Court notes that the claims in this petition are nearly identical to the claims in *Thuraissigiam* except for the petitioners' factual backgrounds concerning alleged persecution in their respective home countries. (*Compare Thurassissigiam v. U.S. Dep't of Homeland Sec.,* Case No. 18cv135-AJB(AGS), ECF No. 1, Pet. *with Mnatsakanyan v. U.S. Dep't of Homeland Sec.*, Case No. 19cv1987-GPC(KSC), ECF No. 1, Pet.) Therefore, *Thuraissigiam* dictates the Court's ruling in this case.

the petitioner did not challenge any of the three DHS determinations under that section. *Id.* at 1103.

Like the petitioner's claims in *Thuraissigiam*, Petitioner raises the exact same claims concerning "the process that led to [his] expedited removal order." (ECF No. 1, Pet. at ¶ 67.) For instance, Petitioner alleges "the asylum officer violated his duty to conduct the interview in a nonadversarial manner and to elicit all relevant and useful information bearing on whether the applicant has a credible fear of persecution or torture", in violation of 8 C.F.R. § 208.30(d). (*Id.* at ¶ 68.) Petitioner also claims "the asylum officer failed to consider relevant country conditions evidence," in violation of 8 U.S.C. § 1225(b)(1)(B)(v). (*Id.* at ¶ 70.) Petitioner further alleges there were "communication problems during the interviews." (*Id.* at ¶ 69.) Petitioner indicates the "hearing before the immigration judge was also procedurally and substantively flawed for many of the same reasons as the asylum officer's interview and decision." (*Id.* at ¶ 75.) In Petitioner's view, "[t]he asylum officer and immigration judge also erred by applying an incorrect legal standard." (*Id.* at ¶ 86.) Petitioner maintains that Respondents violated his "statutory and regulatory rights by depriving him of a meaningful right to apply for [immigration relief]." (*Id.* at ¶ 84.) According to Petitioner, the statutory and regulatory claims "entitle Petitioner to a fair procedure to apply for [immigration relief]," and the "procedural rights guaranteed by these statutes and regulations were violated." (*Id.* at ¶ 85.)

As in *Thuraissigiam*, Petitioner's claims do not concern the three basic factual determinations under § 1252(e)(2) that allows federal habeas review. Petitioner does not contest whether he is a noncitizen, whether he was ordered removed under expedited removal proceedings, or whether he possesses some other lawful immigration status. Because Petitioner's "petition does not challenge any of those determinations, § 1252(e)(2) does not authorize jurisdiction over the petition." *See Thuraissigiam*, 917 F.3d at 1103.

## 2. Jurisdiction Under the Suspension Clause

Petitioner cites the Suspension Clause as a constitutional basis for this Court's jurisdiction over his habeas petition.[6] (ECF No. 1, Pet. at ¶ 1.) Acknowledging the Ninth Circuit's recent determination in *Thuraissigiam*, that the Suspension Clause may apply to certain noncitizens in expedited removal proceedings in certain circumstances, Respondents argue *Thuraissigiam* does not apply in the instant case. (ECF No. 4, Opp. at 7-8:17-6.) Given the identical claims here as in *Thuraissigiam*, the Court concludes it has jurisdiction over Petitioner's habeas petition under the Suspension Clause.

The Suspension Clause states, "[t]he Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may

---

[6] The Court notes that Petitioner merely cites to the Suspension Clause in the petition with no analysis or even reference to the recent Ninth Circuit case, *Thuraissigiam*, which directly addresses his claims. Further, Petitioner did not file a reply in response to Respondents' argument that the ruling in *Thuraissigiam* does not apply to Petitioner. Since Respondents raise the applicability of *Thuraissigiam* to this case, the Court considers whether the Suspension Clause provides this Court with jurisdiction over the claims raised in the petition.

require it." U.S. Const. art. I, § 9, cl. 2. "The Suspension Clause prevents Congress from passing a statute that effectively suspends the writ absent rebellion or invasion." *Thuraissigiam*, 917 F.3d at 1105. "Our nation's founders viewed the writ [of habeas corpus] as a 'vital instrument' to secure individual liberty." *Id.* (quoting *Boumediene v. Bush*, 553 U.S. 723, 743 (2008)).

The Ninth Circuit outlined the two-step process to determine whether federal district courts have jurisdiction over habeas petitions under the Suspension Clause filed by individuals in expedited removal proceedings. *Id.* at 1112. First, a court must ask whether the Suspension Clause applies to a petitioner. *Id.* at 1107. Second, if the Suspension Clause applies, a court must consider whether § 1252(e)(2) provides review that satisfies the Suspension Clause. *Id.* "At a minimum, the Suspension Clause entitles the [petitioner] to a meaningful opportunity to demonstrate that he is being held pursuant to the erroneous application or interpretation of relevant law." *Id.* at 1116 (quoting *Boumediene*, 553 U.S. at 779) (internal quotation marks omitted).

After careful review of the statutory provision, review of precedent analyzing the Suspension Clause, and review of finality era cases,[7] the Ninth Circuit concluded that § 1252(e)(2) unlawfully suspends the writ when an individual in expedited removal

_____

[7]"The finality era refers to an approximately sixty-year period when federal immigration law rendered final . . . the Executive's decisions to admit, exclude, or deport noncitizens. This period began with the passage of the Immigration Act of 1891, . . . and concluded when Congress enacted the Immigration and Nationality Act of 1952, . . . which permitted judicial review of deportation orders through declaratory judgment actions in federal district courts." *Thuraissigiam*, 917 F.3d at 1109 n. 11 (internal quotation marks omitted).

proceedings seeks to challenge the government's "failure to follow the required procedures and apply the correct legal standards[.]" *Id.* at 1116. "[B]ecause § 1252(e)(2) prevents a court from reviewing claims of procedural error relating to a negative credible fear determination, it precludes review of the agency's application of relevant law and thus raises serious Suspension Clause questions." *Id.* at 1119.

Notwithstanding § 1252(e)(2)'s explicit limitation of judicial habeas review to three DHS determinations, an individual in expedited removal proceedings may file a habeas petition in federal district court challenging the government's failure "to follow the required procedures and apply the correct legal standards when evaluating his credible fear claim." *Id.* at 1116. In other words, a petitioner may claim that he was denied the right to a "meaningful credible fear procedure to which he is entitled under the immigration statute, regulations, and Constitution." *Id.* The Ninth Circuit expressly reserved judgment on "whether the Suspension Clause requires judicial review of DHS' credible fear determination on the merits." *Id.* n. 20.

### i. Step One: Whether the Suspension Clause Applies to Petitioner

Respondents argue that the Suspension Clause does not apply to Petitioner because, distinct from the petitioner in *Thuraissigiam* who was found in the United States, Petitioner, in this case, is an applicant for admission at the U.S. Port of Entry.

In *Thuraissigiam*, the Ninth Circuit found that the Suspension Clause applies to noncitizens apprehended within the United States. *Thuraissigiam*, 917 F.3d at 1115. In

reviewing Supreme Court precedent during the finality era[8], the Ninth Circuit determined that the petitioner in *Thuraissigiam*, a noncitizen apprehended within the United States, could invoke the Suspension Clause "[b]ecause in the finality era the Court permitted *even arriving noncitizens* to invoke habeas review[.]" *Id.* (emphasis added).

Unlike *Thuraissigiam*, where CBP placed the petitioner in expedited removal proceedings after apprehending him within the United States, here, CBP placed Petitioner in expedited removal proceedings after apprehending him at the U.S. Port of Entry in San Ysidro, California. (ECF No. 1, Pet. at ¶ 4.) Respondents argue that Petitioner's status as an arriving noncitizen is a material distinction from the petitioner's status in *Thuraissigiam* "because, in *Garcia de Rincon*[9], the Ninth Circuit ruled that the Suspension Clause had not been triggered as to an applicant for admission." (ECF No. 4, Opp. at 8-9.) In referencing *Garcia de Rincon*, Respondents also invoke *Li v. Eddy*, 259 F.3d 1132 (9th Cir. 2001), for the proposition that an arriving noncitizen "has no constitutional due process right to challenge her immigration status or to petition for entry into the United States[.]" *Id.* at 1136, *vacated on reh'g as moot*, 324 F.3d 1109 (9th Cir. 2003).

Distinguishing Suspension Clause rights from Fifth Amendment due process rights, the Ninth Circuit made clear in *Thuraissigiam* that *Garcia de Rincon* "addressed

---

[8] The 'finality era' refers to the to a period when Congress sought to eliminate judicial review of immigration cases by making administrative orders "final."

[9] *Garcia de Rincon v. Dep't of Homeland Sec.*, 539 F.3d 1133 (9th Cir. 2008).

only whether § 1252(e)(2) suspends the writ when a petitioner lacks due process rights." *Thuraissigiam*, 917 F.3d at 1113. In *Li*, the Ninth Circuit addressed the petitioner's status as to her constitutional right to due process, not the Suspension Clause. *Li*, 259 F.3d at 1132. Because *Garcia de Rincon* and *Li* addressed due process claims, not the Suspension Clause, they are unavailing as to the question of whether the Suspension Clause applies to Petitioner, an arriving noncitizen requesting asylum at a U.S. Port of Entry. *See Thuraissigiam*, 917 F.3d at 11113 ("*Garcia de Rincon* says nothing about whether [the petitioner] can invoke the Suspension Clause, whether the Clause requires habeas review of statutory or legal claims, or what the Clause requires for a petitioner . . . who is within the United States.").

Relying on the United States Supreme Court's finality era cases in addressing the reach of the Suspension Clause, the Ninth Circuit concluded that the petitioner could invoke the Suspension Clause even though he was arrested within the United States because in the finality era, the Supreme Court allowed even arriving non-citizens to invoke habeas review. *Thuraissigiam*, 917 F.3d at 1115; *see also Nishimura Ekiu v. United States*, 142 U.S. 651, 660 (1892) (affirming that a "[noncitizen] immigrant, prevented from landing by any such officer claiming authority to do so under an act of congress, and thereby restrained of his liberty, is doubtless entitled to a writ of *habeas corpus* to ascertain whether the restraint is lawful"); *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212-13 (1953) (establishing that a noncitizen who had not entered the country "may by habeas corpus test the validity of his exclusion").

Because Petitioner in this case is an arriving noncitizen requesting asylum at a U.S. Port of Entry, the Court concludes that the Suspension Clause applies to Petitioner.

### ii. Step Two: Whether § 1252(e)(2) Unlawfully Suspends the Writ of Habeas Corpus as applied to Petitioner

Having concluded that the Suspension Clause applies to Petitioner, this Court considers whether 8 U.S.C. § 1252(e)(2) unlawfully suspends the writ of habeas corpus as applied to Petitioner.

In *Thuraissigiam*, the petitioner asserted his "expedited removal order violated his statutory, regulatory, and constitutional rights" and sought to vacate the removal order, as well as sought a "new, meaningful opportunity to apply for asylum and other relief from removal." *Thuraissigiam*, 917 F.3d at 1101-02. The petitioner claimed the government denied him a "fair procedure," "appl[ied] an incorrect legal standard[,]" and "fail[ed] to comply with the applicable statutory and regulatory requirements." *Id.* at 1116.

Noting that the Suspension Clause entitles a petitioner to a "meaningful opportunity to demonstrate that he is being held pursuant to the erroneous application or interpretation of relevant law." *id.* at 1116, in *Thuraissigiam,* the Ninth Circuit found that § 1252(e)(2) violated the Suspension Clause because the habeas provision failed to provide the petitioner with a meaningful opportunity for review of an erroneous application or interpretation of the statute. *Id.* at 1117. Specifically, the Ninth Circuit observed that there "are no rigorous adversarial proceedings prior to a negative credible fear determination." *Id.* at 1118. Any "meager procedural protections" afforded by §

1252(e)(2) "are compounded by the fact that § 1252(e)(2) prevents any judicial review of whether DHS *complied* with the procedures . . . or applied the correct legal standards." *Id.* at 1118. The Ninth Circuit, therefore, concluded that § 1252(e)(2) did not satisfy the constitutional minimum and violated the Suspension Clause as applied to Thuraissigiam. *Id.* at 1118-19.

In this case, Petitioner presents the same claims as the petitioner in *Thuraissigiam*, arguing that the government failed to follow fair procedure and applied an incorrect legal standard. In reliance on *Thuraissigiam*, this Court also concludes that 8 U.S.C. § 1252(e)(2) unlawfully suspends the writ of habeas guaranteed under the Suspension Clause as applied to Petitioner.

Because the Suspension Clause applies to Petitioner and § 1252(e)(2) unlawfully suspends the writ of habeas as applied to Petitioner, this Court has jurisdiction over Petitioner's habeas petition.

## B. Judicial Review

In *Thuraissigiam*, the Ninth Circuit remanded the case to the district court to consider petitioner's legal challenges to the procedures underlying his expedited removal order. *Thuraissigiam*, 917 F.3d at 1119. However, the Ninth Circuit did not opine on "what rights or rights [petitioner] may vindicate via use of the writ." *Id.*

Subsequent district court cases have noted that the Ninth Circuit "did not consider whether a district court could hear challenges to an expedited removal order other than the type raised by Thuraissigiam, including challenges to credible fear findings on the

merits." *Lopez-Mendoza v. Barr*, Case No. CV 19-1448-DSF(AS), 2019 WL 6710861, at *4 (C.D. Cal. Sept. 11, 2019), *report and recommendation adopted*, 2019 WL 6709540 (C.D. Cal. Oct. 23, 2019); *see also Thuraissigiam*, 917 F.3d at 1116 n. 20 (stating "[w]e therefore do not consider here whether the Suspension Clause requires judicial review of DHS' credible fear determination on the merits"); *Singh v. U.S. Dep't of Homeland Sec.*, Case No. C19-1224-JLR-MAT, 2020 WL 420589, at *9 (W.D. Wash. Jan. 3, 2020), *report and recommendation adopted*, 2020 WL 419755 (W.D. Wash. Jan. 24, 2020) ("*Thuraissigiam* did not establish that the Suspension Clause requires judicial review of the merits of a credible fear determination . . . the Court does not have jurisdiction over petitioner's challenge to the merits of AO's finding that he was not credible and the IJ's affirmance of this decision."); *Mehla v. U.S. Dep't of Homeland Sec.*, -- F. Supp. 3d --, 2019 WL 6611508, at *6 (S.D. Cal. Dec. 5, 2019) (denying claims challenging the officer's discretionary conclusions); *Funes Suazo v. McAleenan*, Case No. 19cv1882-LAB(MSB), 2019 WL 4849188, at *2 (S.D. Cal. Oct. 1, 2019) (indicating *Thuraissigiam* "does not appear to provide for judicial review of an immigration judge's discretionary determinations") (citation omitted).

### 1. Discretionary Credibility Determination

Respondents argue that notwithstanding Petitioner's argument that the IJ misinterpreted or misapplied asylum law, the IJ denied Petitioner relief because of the adverse credibility findings which he does not challenge. At the hearing, the IJ stated she was not convinced that Petitioner's testimony was truthful. (DAR Disc 2, Track 12 at

4:45.) The IJ noted that Petitioner's asylum claim was inconsistent with the fact that he made visa applications to travel to the United States at the same time when Petitioner claimed he was being persecuted. (*Id.*at 4:23.)

The IJ noted that Petitioner had applied for U.S. visas on two occasions. (DAR Disc 1, Track 1 at 3:45.) The first application was in November 2018, and the second was in April 2019. (DAR Disc 2, Track 8 at 0:30, 3:05.) In both applications, Petitioner sought business and tourism visas. (DAR Disc 2, Track 8 at 0:30, 3:05.) Petitioner's troubles with the Prosperous Party began on October 10, 2018, when two people offered him money to promote the Prosperous Party. (ECF No. 1, Pet. at ¶ 42.) From October 2018 to April 2019, Petitioner alleged he was subject to threatening phone calls, unannounced visits from local officials citing his business for no specific reason, and physical attacks resulting in hospitalization. (*Id.* at ¶¶ 42-65.) Petitioner did not mention these events when he applied for the visas. (DAR Disc 2, Track 8 at 2:25, 4:24.) Based on these facts, the IJ found Petitioner not credible. (DAR Disc 2, Track 12 at 4:00.)

Petitioner does not challenge the IJ's finding of no credibility. Moreover, the Court has no jurisdiction to consider the IJ's discretionary credibility determination. *See Mehla,* -- F. Supp. 3d --, 2019 WL 6611508, at *6; *Funes Suazo*, 2019 WL 4849188, at *2 (S.D. Cal. Oct. 1, 2019). Accordingly, because the IJ found him not credible, the remaining challenges to the IJ's ruling necessarily fail and the Court DENIES the petition for writ of habeas corpus. Alternatively, even if the IJ found Petitioner credible and the

Court considered the claims raised in the petition, they are without merit for the following independent reasons.

### 2. Petitioner's Habeas Claims

#### i. Asylum Officer Credible Fear Interview

Petitioner raises numerous claim against the asylum officer's conduct during the interview arguing that the "asylum officer violated his duty 'to conduct the interview in a nonadversarial manner' and 'to elicit all relevant and useful information bearing on whether the applicant has a credible fear of persecution or torture[,]" in violation of 8 C.F.R. § 208.30(d). (ECF No. 1, Pet. at ¶ 68.) Petitioner characterizes the asylum officer's questioning as "antagonistic[,]" claiming the asylum officer "appeared intent on finding problems" with Petitioner's testimony "[r]ather than trying to understand the testimony[.]" (*Id.*) Petitioner also claims there were "communication problems during the interviews." (*Id.* at ¶ 69.) Petitioner explains that "[t]he translator at the initial CBP interview did not understand [Petitioner] and initially appears to have mistranslated the name of the Prosperous Armenia Party." (*Id.*) As a result, "[t]he asylum officer relied on the mistranslation to question [Petitioner's] testimony at the second Credible Fear Interview and accused [Petitioner] of having misstated the name of the party[.]" (*Id.*) Petitioner claims the communication issues "affected the interview throughout, in violation of the regulations governing the credible fear interview process." (*Id.*) Petitioner alleges the "negative credible fear determination also resulted from a number

of legal errors." (*Id.* at ¶ 70.) Specifically, Petitioner claims "the asylum officer failed to consider relevant country conditions evidence, as he was legally required to do." (*Id.*)

Despite the numerous challenges to the asylum officer's conduct during the credible fear interview, Petitioner has not met his evidentiary burden by providing any evidentiary documents to support his claims and as such, the Court is unable to assess Petitioner's claims. Petitioner does not include a transcript of his interview nor any relevant documents, such as an inadmissibility report, detailing his interview with the asylum officer.[10] Without a record of what transpired between Petitioner and the asylum officer, this Court cannot determine whether Petitioner's claims with respect to his interview with the asylum officer amount to procedural violations. Accordingly, his claims challenging the asylum officer's credible fear interview is not supported. *See Singh v. McAleenan*, Case No. 19cv2154-AB-SHK, 2019 WL 6053007, at *3 (C.D. Cal. Nov. 15, 2019) (denying petition because petitioner failed to provide any evidence, such as a transcript or declaration, to support his claims); s*ee, e.g.*, *Snook v. Wood*, 89 F.3d 605, 609 (9th Cir. 1996), *as amended on denial of reh'g* (Sept. 4, 1996) ("It is the petitioner's burden to prove his custody is in violation of the Constitution, laws or treaties

---

[10] An asylum officer "shall prepare a written record of a determination" if a noncitizen does not have a credible fear of persecution. 8 U.S.C. § 1225(b)(1)(B)(iii)(II). The "record shall include a summary of the material facts as stated by the applicant, such additional facts (if any) relied upon by the officer, and the officer's analysis of why, in the light of such facts, the [noncitizen] has not established a credible fear of persecution." *Id.* The IJ provided the case documents to Petitioner at his initial immigration hearing on July 15, 2019. (DAR, Disc 1, Track 1 at 1:50.) At this immigration hearing, Petitioner acknowledged prior receipt of his case documents. (*Id.* at 2:19.)

19cv1987-GPC(KSC)

of the United States.") (citing *Johnson v. Zerbst,* 304 U.S. 458 (1938)); *McKenzie v. McCormick*, 27 F.3d 1415, 1418-19 (9th Cir. 1994) ("Petitioner must also convince the district court by a preponderance of evidence of the facts underlying the alleged constitutional error.") (citations omitted).

## ii. Hearing before Immigration Judge

Petitioner first claims the IJ acted as a prosecutor and not a neutral arbiter when reviewing Petitioner's adverse credible fear determination because the IJ went outside the scope of her review and relied on materials or information that were not before the asylum officer in violation of 8 C.F.R. §§ 208.30(g)(2)(ii) and 1208.30(g)(2)(ii). (ECF No. 1, Pet. at ¶¶ 74, 80.) In Petitioner's view, at least three circumstances constituted violations of 8 C.F.R. §§ 208.30(g)(2)(ii) and 1208.30(g)(2)(ii): (1) The IJ's request for Petitioner's inadmissibility determination and visa applications on the dates Petitioner fled Armenia. (*Id.* at ¶ 74.) (2) The IJ's questioning of why Petitioner did not apply for asylum elsewhere. (*Id.* at ¶ 78.) (3) The IJ's questioning of why Petitioner did not relocate elsewhere in Armenia. (*Id.* at ¶ 80.)

8 C.F.R. §§ 208.30(g)(2)(ii) and 1208.30(g)(2)(ii) both provide that the "record of the negative credible fear determination, including copies of the Form I-863, the asylum officer's notes, the summary of the material facts, and other materials upon which the determination was based shall be provided to the immigration judge with the negative determination." 8 U.S.C. §§ 208.30(g)(2)(ii) and 1208.30(g)(2)(ii). The regulations do not limit what the IJ may consider in reviewing the asylum officer's adverse credible fear

determination. In other words, 8 U.S.C. §§ 208.30(g)(2)(ii) and 1208.30(g)(2)(ii) create a floor, not a ceiling, of what materials the IJ may review in evaluating Petitioner's appeal. In fact, the IJ "may receive into evidence any oral or written statement which is material and relevant to any issue in the review." 8 C.F.R. § 1003.42(c); *Hernandez-Silvas v. Attorney Gen. of United States*, 767 F. App'x 322, 326 (3d Cir. 2019) (noting the Immigration Court Practice Manual instructs that additional evidence may be introduced at the IJ's discretion). Furthermore, the regulations provide that the "immigration judge shall make a de novo determination as to whether there is a significant possibility, taking into account the credibility of the statements made by the [noncitizen] in support of the [noncitizen's] claim *and such other facts as are known to the immigration judge*, that the alien could establish eligibility for asylum[.]" 8 C.F.R. § 1003.42(d)(1) (emphasis added). Thus, Petitioner's argument to the contrary is without merit.

Next, Petitioner challenges the IJ's decision to hold a hearing without the presence of retained counsel "based on the [immigration judge's] erroneous belief that the negative credibility finding had been issued weeks earlier." (ECF No. 1, Pet. at ¶ 74.) While an individual in expedited removal proceedings "may consult with a person or persons of the [individual's] choosing prior to the review", 8 C.F.R. § 1003.42(c), the individual does not have a right to counsel at an immigration hearing. *See* 8 C.F.R. § 287.3(c) ("*Except in the case of [a noncitizen] subject to the expedited removal provisions* of section 235(b)(1)(A) of the Act, [a noncitizen] arrested without warrant and placed in formal proceedings under section 238 or 240 of the Act will be advised of the

reasons for his or her arrest and the right to be represented at no expense to the Government.") (emphasis added); *United States v. Barajas-Alvarado*, 655 F.3d 1077, 1088 (9th Cir. 2011) ("Because non-admitted aliens are entitled only to whatever process Congress provides . . . Barajas-Alvarado's lack of representation in the removal proceeding did not constitute a procedural error at all[.]") (citation omitted); *United States v. Grande*, 623 F. App'x 858, 860 (9th Cir. 2015) ("non-citizen's lack of representation in the removal proceeding did not constitute a procedural error at all, let alone a due process violation").  Instructed to conclude Petitioner's review no "later than 7 days after the date the supervisory asylum officer has approved the asylum officer's negative credible fear determination[,]" 8 C.F.R. § 1003.42(e), the IJ correctly informed Petitioner that he had "the right to consult a lawyer [but] not . . . the right to be represented by a lawyer."  (DAR Disc 1, Track 5 at 4:40.)  Consequently, Petitioner's "claim that he was denied his right to counsel, is meritless on its face."  *Barajas-Alvarado*, 655 F.3d at 1088.

Additionally, Petitioner alleges that the "immigration judge, like the asylum officer, failed to take account of the widely known country conditions evidence that corroborated Petitioner's testimony."  (ECF No. 1, Pet. at ¶ 75.)  Petitioner further claims the IJ's failure to consider Petitioner's testimony regarding "translation problems during the initial border interview . . . clearly demonstrate that [the IJ] was inclined to doubt

[Petitioner's] testimony and affirm the asylum officer's denial."[11]  (*Id.*)  Petitioner also

suggests the immigration judge was biased and predisposed to denying his asylum claim.

(*Id.* at ¶ 79.)  Petitioner maintains: "[u]nder the correct standard—which requires only

that an applicant show a significant possibility there is a 10% chance of establishing

eligibility for asylum, or a significant possibility of establishing eligibility for

withholding of removal or CAT—[Petitioner] should have prevailed."  (*Id.* at ¶ 81.)

Under the statute, an asylum officer makes the initial determination whether

Petitioner has a credible fear of persecution.  When Petitioner seeks *de novo* review with

an IJ, the IJ determines "whether there is a significant possibility, taking into account the

credibility of the statements made by the [noncitizen] in support of the [noncitizen's]

claim and such other facts as are known to the immigration judge, that the [noncitizen]

could establish eligibility for asylum[.]"  8 C.F.R. § 1003.42(d)(1); *see also* 8 U.S.C. §

1225(b)(1)(B)(v).

*Thuraissigiam*, however, limits a district court's judicial review to procedural

violations, not an IJ's discretionary determinations.  *Thuraissigiam*, 917 F.3d at 1118 n.

20 ("We therefore do not consider here whether the Suspension Clause requires judicial

review of DHS' credible fear determination on the merits.").  Indeed, challenges seeking

judicial review of "the immigration judge's factual determinations and calling upon this

---

[11] In assessing Petitioner's credibility, "[t]he IJ may not rely on an asylum officer's subjective conclusions about a petitioner's demeanor or veracity at an earlier interview." *Lizi Qiu v. Barr*, 944 F.3d 837, 843 (9th Cir. 2019).  Here, however, the IJ premised her finding of no credibility on Petitioner's prior visa applications.  (DAR Disc 2, Track 12 at 4:00.)

19cv1987-GPC(KSC)

Court to reweigh the evidence" are not reviewable under *Thuraissigiam*.  *See Lopez-Mendoza*, 2019 WL 6710861, at \*4; *Singh,* 2020 WL 420589, at \*9 ("the Court does not have jurisdiction over petitioner's challenge to the merits of AO's finding that he was not credible and the IJ's affirmance of this decision."); *Funes Suazo*, 2019 WL 4849188, at \*2 (no judicial review of an immigration judge's discretionary determinations).  This Court "is barred from reweighing the evidence in a credible fear determination."  *See Paz-Zamora v. Archambeault*, Case No. 18cv2187-GPC(KSC), 2018 WL 5785287, at \*3 (S.D. Cal. Nov. 5, 2018) (citing 8 U.S.C. § 1252(a)(2)(A)(iii)).  Therefore, Petitioner's arguments are without merit as they seek to challenge the IJ's discretionary factual determinations.

Finally, Petitioner claims "[t]he immigration judge erroneously affirmed the negative credibility determination finding that [Petitioner] had not been targeted and harmed on account of his political opinion, but rather because his persecutors had 'certain designs on [his] business.'"  (ECF No. 1, Pet. at ¶ 79).  Petitioner also asserts that "the immigration judge conveniently ignored [Petitioner's] testimony that he had expressly rejected the offer to help the Prosperous Armenia Party's request to engage in fraudulent election practices because he was against such practices because he believed that people should not be pressured or forced to vote for any particular party[.]"  (*Id.*)  Petitioner claims he "was clearly expressing a political opinion."  (*Id.*)

Again, Petitioner is seeking for the Court to improperly reweigh the evidence before the IJ.  *See Paz-Zamora*, 2018 WL 5785287, at \*3.  After hearing the testimony of

Petitioner, including his testimony that he believed he was targeted because he was against political corruption, and the record before her, the IJ concluded that Petitioner was "targeted because of who he was in the community and the influence that . . . [he] had with the people around [him,]" not because he had "any particular political opinion." (DAR Disc 2, Track 11 at 3:35.) Petitioner asks the Court to review the facts presented before the IJ and to arrive at a different conclusion. That is not permitted under the law.

Here, the IJ provided Petitioner a meaningful opportunity by allowing "lengthy and detailed testimony" about his fear of persecution, (ECF No. 1, Pet. at ¶ 78). In the end, the IJ nonetheless affirmed the asylum officer's adverse credible fear determination, finding Petitioner was both not credible and not persecuted due to his political opinion.

Petitioner does not claim the IJ applied an incorrect legal standard or failed to comply with the applicable statutory and regulatory requirements, but in essence, disagrees with the IJ's factual determinations. Petitioner argues the facts under the "correct standard" warranted a different result. In so doing, Petitioner asks this Court to do precisely what it does not have jurisdiction to do: reweigh the IJ's discretionary determinations. Petitioner "cannot create jurisdiction by alleging nothing more than a challenge to the [IJ's] discretionary and fact-finding exercises cloaked as a question of law." *See Rais v. Holder*, 768 F.3d 453, 462 n. 17 (6th Cir. 2014) (citation omitted).

### iii. Due Process Claims

Petitioner also argues his due process rights were violated by the asylum office and IJ because he was not provided a meaningful opportunity to establish his claims, the

asylum officer and IJ failed to comply with the applicable statutory and regulatory requirements and failed to provide him with a reasoned explanation for their decisions. (ECF No. 1, Pet. at ¶ 91.) Petitioner claims that "[u]nder constitutionally adequate procedures, [he] would have prevailed on his claims." (*Id.*)

Section 1252(e) narrows the circumstances in which federal courts may review habeas petitions by noncitizens in expedited removal proceedings. While *Thuraissigiam* permits federal courts to assert jurisdiction over habeas petitions alleging procedural violations in expedited removal proceedings, it does not authorize federal courts to assert jurisdiction over habeas petitions alleging due process violations in expedited removal proceedings. In fact, the Ninth Circuit in *Thuraissigiam* distinguished procedural claims from due process claims. *See Thuraissigiam*, 917 F.3d at 1113. Because *Thuraissigiam* did not expand habeas review to include due process violations and § 1252(e)(2) permits only limited review of expedited removal orders in a habeas petition, which Petitioner does not raise in this case, the Court lacks jurisdiction over any due process claims. *See* 8 U.S.C. § 1252(e)(2); *Pena*, 815 F.3d at 456 ("§ 1252(a)(2)(A) *strictly* circumscribes the scope of review of expedited removal orders to the grounds enumerated in § 1252(e)").

## Conclusion

Based on the reasoning above, the Court DENIES the petition for writ of habeas corpus. The Clerk of Court shall close the case.

IT IS SO ORDERED.

Dated: March 16, 2020

Hon. Gonzalo P. Curiel
United States District Judge

19cv1987-GPC(KSC)